UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:10CR-74-JHM

UNITED STATES OF AMERICA                                    PLAINTIFF

V.

JAMES L. HOLLOWAY                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant James Holloway's Motion to Suppress and Request for Suppression Hearing [DN #34]. Fully briefed, this matter is ripe for decision. For the following reasons Defendant's motion to suppress and request for a hearing is **DENIED**.

## I. BACKGROUND

On May 19, 2008, Naval Criminal Investigative Services (NCIS) Special Agent Rachel Lepovetsky was conducting an undercover child exploitation investigation in Yahoo! chat rooms. In that capacity, Special Agent Lepovetsky posed as a 32-year-old mother of a six-year-old girl and a ten-year-old girl. While chatting in the Yahoo! chat room titled "fetish 14," Special Agent Lepovetsky was contacted by a person using the screen name "Consul_211." The conversation began as follows: "Good afternoon . . . . do you enjoy looking at and chatting about pics of young girls?" Special Agent Lepovetsky responded "I don't have any to give you." Consul_211 replied "No problem . . . . just enjoy" at which point "Consul_211" sent Special Agent Lepovetsky images of suspected child pornography. Special Agent Lepovetsky's continued to converse with "Consul_211" for nearly an hour, during which time, "Consul_211" sent approximately twenty images of suspected child pornography. "Consul_211" also stated that he had taken some pictures of "young models" and proceeded to describe sexually explicit activity done by the "young models"

at his direction.

Thereafter, Special Agent Lepovetsky obtained a search warrant seeking subscriber information from Yahoo! records for the user of the screen name "Consul_211." The warrant was executed on July 2, 2008, and disclosed that "Consul_211's" subscriber information identified the user as a Jim Hall of Louisville, Kentucky, with a date of birth of January 15, 1962. Yahoo! also provided the IP address used by "Consul_211" during his conversation with Special Agent Lepovetsky on May 19, 2009.

Using this information, Special Agent Lepovetsky prepared an affidavit and obtained a search warrant seeking the subscriber identity of the IP address in question from Insight Communications. The search warrant was executed on August 1, 2008, and Insight revealed that the particular IP address used on May 19, 2009, was registered to Emma Jimenez, who had an address on Shady Lane in Louisville, Kentucky. Listed as the spouse/roommate of Jimenez in the subscriber information was the Defendant, James Holloway.

At this point, Special Agent Lepovetsky determined that the suspected user of the "Consul_211" username, James Holloway, was not associated with the military. Special Agent Lepovetsky forwarded the information she had gathered to the Kentucky Internet Crimes Against Children Task Force. Detective Dan Jackman of the Louisville Metro Police Department Crimes Against Children Unit cross-referenced the information provided by Special Agent Lepovetsky with a Kentucky Operators License for James Holloway, which revealed a match regarding the Shady Lane address provided by Insight as well as a near match regarding the date-of-birth provided

2

by Yahoo!¹ A criminal history search as well as a search of the Jefferson County Clerk's Property Valuation Administrator web site further confirmed that James Holloway resided at the address provided by Insight and that the home itself was owned by James Holloway.

Detective Jackman used the information provided by Special Agent Lepovetsky and his own verification of Holloway's address and date-of-birth to obtain a search warrant for Holloway's home on Shady Lane. The search warrant was issued and executed on September 12, 2008. Detective Jackman and other law enforcement officials conducted the search of Holloway's home and seized several computers and hard-drives. A forensic analysis of those computers revealed 649 still images and 82 movie files of suspected child pornography. Holloway was subsequently indicted. He filed this motion to suppress the evidence of his online conversation with Special Agent Lepovetsky, arguing that her investigation was a violation of the Posse Comitatus Act. He argues in the alternative that the evidence seized at his home should be excluded because the information contained in the affidavit in support of the search warrant was stale.

## II. DISCUSSION

Defendant contends that Special Agent Lepovetsky's under cover conversation in the Yahoo! chat room and subsequent investigation was a violation of 18 U.S.C. § 1385 commonly known as the Posse Comitatus Act (PCA). The PCA prohibits Army or Air Force personnel from participating in civilian law enforcement activities except in cases and under circumstances expressly authorized by the Constitution or an act of Congress. 18 U.S.C. § 1385 (1984). The Navy and Marine Corps are included in this prohibition based on 10 U.S.C. § 375, which requires the Secretary of Defense

---

¹ The affidavit prepared by Detective Jackman notes that the date of birth for James Holloway is only one digit off from the date of birth for the Yahoo! user Jim Hall. It appears that the only difference between the two dates-of-birth is the digit indicating the decade.

3

to prescribe regulations to prevent any member of the military from participating in civilian law enforcement activities. In accordance with § 375, the Secretary of Defense promulgated a Department of Defense Directive which was subsequently implemented by the Secretary of the Navy. This directive "generally prohibit[s] 'direct' military involvement in civilian law enforcement activities but permit[s] 'indirect' assistance such as the transfer of information obtained during the normal course of military operations or other actions that 'do not subject civilians to [the] use [of] military power that is regulatory, prescriptive, or compulsory.'" United States v. Hitchcock, 286 F.3d 1064, 1069 (9th Cir. 2002) *amended and superseded by* 298 F.3d 1021 (9th Cir. 2002) (citing DoD Directive 5525.5 § E4.1.7.2. (Jan. 15, 1986) (as amended Dec. 20 1989)). Under this Directive, "[a]ctions that are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities[]" do not violate the PCA. DoD Directive 5525.5§ E4.1.2.1. The investigation and enforcement of the Uniform Code of Military Justice (UCMJ) is considered an independent military purpose under the DoD Directive. Id. § E4.1.2.1.1.

The sexual exploitation of children is prohibited under the UCMJ. See United States v. Allen, 53 M.J. 402, 407 (C.A.A.F. 2000). Special Agent Lepovetsky's under cover investigation was an attempt to stop the sexual exploitation of children as prohibited by the UCMJ. As such, her investigation falls under the independent military purpose exception. Once Special Agent Lepovetsky was able to confirm that "Consul_211" was not a member of the military, she immediately turned the investigation over to the appropriate civil law enforcement department, the Kentucky Internet Crimes Against Children Task Force. Special Agent Lepovetsky was not personally involved with obtaining the search warrant to search Defendant's home, the search of the

home itself, the seizure of any evidence, the analysis of any evidence seized, or the arrest of Defendant. Special Agent Lepovetsky's assistance in Defendant's case was only incidental. Defendant was not subjected to the regulatory, prescriptive, or compulsory use of military power. In situations such as this, the PCA is not violated by such assistance. See e.g. Hitchcock, 286 F.3d at 1070 (finding NCIS and CID agents participation in the investigation, arrest, search, seizure, and interrogation of a civilian defendant was not a violation of the PCA where an independent military purpose existed); Hayes v. Hawes, 921 F.2d 100, 103 (7th Cir. 1990) (finding no violation of the PCA where NIS agents shared information with local police about drug activity, aided in surveillance, and made the undercover buy).

Even had there been a violation of the PCA, the exclusion of the evidence would not be appropriate under the circumstances of this case. "As a general matter, the exclusionary rule is not a remedy for violations of the PCA." United States v. Al-Talib, 55 F.3d 923 (4th Cir. 1995) (citing United States v. Griley, 814 F.2d 967, 976 (4th Cir. 1987)); United States v. Wolffs, 594 F.2d 77, 85 (5th Cir. 1979). Absent widespread and repeated violations of the PCA and its related regulations, a majority of courts have refused to apply the exclusionary rule. Hayes, 921 F.2d at 104 (collecting cases). There is no allegation that widespread or repeated violations of the PCA or its related regulations have occurred due to military personnel's undercover investigations of the sexual exploitation of children online. The Court finds that even if Defendant could show a violation of the PCA, he has not alleged widespread or repeated violations of the PCA to justify exclusion of his conversation with Special Agent Lepovetsky.

Defendant argues in the alternative that the evidence obtained from the search of his home should be excluded because the information contained in the affidavit in support of the search

5

warrant was stale. An affidavit must allege "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210 (1932). However, "[t]he expiration of probable cause is determined by the circumstances of each case and depends on the inherent nature of the crime." United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006) (citing Sgro, 287 U.S. at 210-11). When a warrant is challenged on the issue of stale information, the Sixth Circuit examines the following variables: (1) the character of the crime; (2) the criminal; (3) the items to be seized; and (4) the place to be searched. United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998).

The first factor is the character of the crime. The Sixth Circuit has held that the "same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009). The simple fact is that unlike drugs and other fungible items transferred during criminal activity, "[i]mages typically persist in some form on a computer hard drive even after the images have been deleted and . . . can often be recovered by forensic examiners." United States v. Terry, 522 F.3d 645, 650 n.2 (6th Cir. 2008). Furthermore, "[c]ourts have found that there is an 'enduring quality' of these materials to child pornography collectors and that they often hoard and retain these illicit materials." United States v. Tanner, 2008 WL 451021 at *2 (W.D. Ky. 2008) (finding a three month gap between the online discovery of the allegedly pornographic material and the issuance of the search warrant did not create a staleness issue). Given the character of child pornography offenses, four month old information is not stale.

The second factor analyzes whether the criminal is nomadic or entrenched. Special Agent Lepovetsky's search of Insight's records disclosed that the address from which the IP address in

question originated was a Shady Lane address in Louisville, Kentucky. It also disclosed that Defendant was listed as the spouse of the subscriber of that IP address. Detective Jackman conducted searches of the Jefferson County Clerk's Property Valuation Administrator web site, Defendant's Kentucky Operators License, and Defendant's criminal history report, all of which verified that Defendant still resided at the Shady Lane address. It is clear that the Defendant was "entrenched" at that location.

The third factor, evidence to be seized, addresses whether the nature of the alleged evidence is "perishable," "easily transferable," or " of enduring utility to its holder. United States v. Abboud, 438 F.3d 554, 573 (6th Cir. 2006). When staleness is viewed in context with child pornography, courts have recognized that people suspected of viewing or possessing child pornography commonly retain the illegal material. United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005); United States v. Irving, 432 F.3d 401, 416 (2d Cir. 2005) ("images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes"). "It is well established that digital images of child pornography can have an infinite life span." United States v. Gilliam, 2010 WL 5067691 at *3 (E.D. Ky. 2010) (citing United States v. Frechette, 583 F.3d 374, 379 (6th Cir. 2009)). As noted above, viewers of child pornography are likely to hoard their pornographic photographs, which suggests the likelihood that the alleged child pornography would still be within the Defendant's possession.

The final factor considers whether the place to be searched is a mere criminal forum of convenience or a secure operational base. Abboud, 438 F.3d at 573. The criminal activity in cases involving the viewing of child pornography often occurs in the privacy of one's home. United States v. Wagers, 452 F.3d 534, 540 (6th Cir. 2006). The affidavit established that Defendant was listed

as the spouse of the Insight account holder, with an Insight service address on Shady Lane. It further established that the Defendant currently resided at the same Shady Lane address and, in fact, owned the home. This supports the proposition that the place to be searched, Defendant's home, was a secure operational base.

Based upon a consideration of the above factors, the Court concludes that the information contained in the affidavit was not stale, and that suppression is not appropriate. The Court denies the Defendant's request for a hearing as unnecessary.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress and Request for Suppression Hearing [DN #34] is **DENIED**.

cc: counsel of record